## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Josh Adams, et al.,

      Plaintiffs,

-v-                                       Case No. 2:08–cv–677

Village of Beaver, et al.,                Judge Michael H. Watson

      Defendants.

### <u>OPINION AND ORDER</u>

This civil rights action concerns, *inter alia*, alleged use of excessive force committed against Plaintiffs Josh and Christiana Adams (collectively "Plaintiffs") in their home by two police officers employed by the Village of Beaver ("Beaver"). Plaintiffs assert a claim under 42 U.S.C. §1983 for violation of their rights under the Fourth, Fifth, and Eighth Amendments; a claim under 42 U.S.C. §1985 for conspiracy to violate their constitutional rights; and four claims under state tort law, which include assault and battery, false imprisonment, intentional infliction of emotional distress, and negligence. Compl. ¶¶ 25–49, ECF No. 4. This matter is before the Court on the motion for summary judgment filed by Defendants Beaver, Daniel D. Seal ("Seal"), and Brady Ratzlaff ("Ratzlaff") (collectively, "Defendants"). Defs.' Mot Summ. J., ECF No. 19. For the following reasons, the Court grants Defendants' motion for summary judgment in part and denies it in part.

## I. FACTS

Plaintiffs John Adams ("Josh") and Christina Adams ("Christina") (jointly

"Plaintiffs") are a married couple who reside with their three young children in Beaver, Ohio. Seal and Ratzlaff worked for Beaver's police department: Seal was the Deputy Marshal and Ratzlaff was a Marshal. Shawn A. Mather ("Mather") was a volunteer police trainee for Beaver.[1] Plaintiffs also name Beaver as a defendant. Beaver is a charter municipality in Pike County, Ohio with a population of about 445 people.[2] Beaver operates its Marshal's office to provide law enforcement for the village.

In February 2003, Beaver appointed Seal, without an interview, to be a Deputy Marshal for Beaver. Before becoming Deputy Marshal and shortly after graduating from the Southern Ohio Police Academy, Seal was an unpaid auxiliary officer for Beaver. Seal served as an auxiliary officer for only a few months before his promotion to Deputy Marshal. He served as Deputy Marshal from 2003 until 2008. Seal left that position shortly after the time of the incident with Plaintiffs that gave rise to the instant lawsuit. Along with the rest of Beaver's police department, Seal never received a performance review.

On October 7, 2007, Plaintiffs returned home with their three children from the local Oktoberfest where they had spent the evening. At the Oktoberfest, individuals allegedly set off fireworks. Once home, John and Christina put their children to bed and stayed up a little while longer. Around 1:00 a.m., while John was in the bedroom getting ready for bed, Christina was in the living room turning off the lights.

---

[1] Plaintiffs initially named Mather as a Defendant in their complaint. Plaintiffs voluntarily released Mather as a named party on May 5, 2010. ECF No. 25.

[2] http://www.city-data.com/city/Beaver-Ohio.html (last visited Mar. 28, 2011).

Near the same time, Seal, Ratzlaff, and Mather were outside the Plaintiffs' home investigating a report that gun shots had been fired in the area. Earlier in the evening, the officers heard what they believed to be gunshots. While conducting a search of a junkyard, the officers received a call from Beaver Mayor Rocky Brown about the sounds and were asked to investigate the area near Mayor Brown's home. Plaintiffs' house is located at the bottom of the hill near Mayor Brown's residence. Seal and Razlaff went by the Plaintiffs' residence. They entered the property and searched Plaintiffs' back yard and porch. On the porch, the police officers found empty .22 caliber brass casings and empty shotgun shell casings. There is a dispute between the parties over whether the casings were from rounds that had been fired that evening or if they had been fired sometime earlier in the week. John and his son were known to shoot firearms from the front porch into an empty field for practice. It is not contended or mentioned that anyone was hurt or appeared to be in danger when Seal, Ratzlaff, and Mather were investigating Plaintiffs' property.

Seal, Ratzlaff, and Mather knocked on the Adams' front door. The parties disagree as to what happened next.

## A. Plaintiffs' Version of the Incident

Plaintiffs claim that upon hearing banging on her door, Christina cracked open the front door. Officer Seal did not identify himself, but instead began asking what she was doing. Christina responded that she had no idea what Seal was talking about and that he needed to be quiet because he might wake her children. Indicating that she was going to get her husband, Christina began to close the front door. Seal then pushed open the door, grabbed Christina by the shoulder, and threw her into a cabinet.

Christina fell to the ground.  Seal got on top of her, injuring Christina's hip and knee. Upon hearing a loud crash and Christina scream, Josh came out of the bathroom and found Seal on top of his screaming wife.

It was dark in the room, so Josh could make out only that a large man was on top of his wife.  Josh immediately ran over to his wife and attempted to pull Seal off her.  Ratzlaff then hit Josh in the head with a Maglite flashlight, cutting open Josh's head.  Next, without warning, Ratzlaff sprayed mace at Josh, filling the house with mace.

Plaintiffs deny that they shot firearms from the front porch on the evening or morning in question.

## B. Defendants' Version of the Incident

Defendants assert that Raztlaff knocked on Plaintiffs' front door and received no response.  Raztlaff knocked again and when Christina opened the door, he identified himself as a police officer.  Christina told him that she had not been on the front porch or discharged firearms.  Seal repeatedly asked Christina to tell him her name.  She refused and then replied, "Fuck you."  Seal then told Christina that he was placing her under arrest for obstructing justice.  As Seal attempted to take hold of Christina's left arm, Christina pulled back into the house, ultimately pulling Seal into the house with her.

Josh immediately went up to Seal and struck Seal at least twice in the head, yelling "You just fucked up."  Seal then used an expandable baton and struck Josh in the center part of his body.  Accidentally, Seal's last blow struck Josh on the head. Josh fell to the floor and began kicking, knocking both Seal and Christina to the floor.

Josh continued to fight with Seal. Ratzlaff entered the room and told Josh that he was a police officer and warned Josh to stop his aggressive behavior or he would mace him. When Josh failed to stop, Ratzlaff discharged mace at Josh and Christina. The fighting then ceased.

**C. Additional Facts**

Prior to Josh and Christina being officially arrested and handcuffed, Christina managed to obtain a phone and call Josh's father, Steve Adams ("Steve"). Christina told him that she needed help. Steve, who lived on the same street, came over to the Plaintiffs' home along with some other acquaintances of Plaintiffs. When Steve asked Seal what was going on, he was told to back away or that he would be arrested. Steve called Mayor Brown and the Pike County Sheriff's Department. During this time, Christina pleaded for someone to remove her children from the house. She could hear one of her children throwing up from the mace.

When Mayor Brown arrived, upon seeing what had occurred, he started screaming at Seal and Ratzlaff for "beating up his citizens." About ten minutes later, after Plaintiffs were handcuffed, Pike County Sheriff's Deputy Brian Reader ("Reader") arrived and took control of the scene. Reader ordered Seal to take the handcuffs off Christina so she could take her children out of the mace-filled house. An emergency medical squad arrived soon after and Josh, Christina, and their three children were taken to the hospital to be treated for their injuries.

Christina underwent several months of physical rehabilitation. She also received treatment for post-traumatic stress disorder relating to the incident. It is also undisputed that the cut on Josh's head required stitches and left a scar. In an interview

after the incident, Mayor Brown told a reporter, "things just got out of hand.  It was a

nightmare.  If we are going to have police like [Seal], then we don't need them."

On July 15, 2008, Plaintiff filed this action against the Village of Beaver, Seal and

Ratzlaff.  Plaintiffs filed an Amended Complaint on July 18, 2008, asserting the

following claims:

| | |
|---|---|
| Count I. | Violation of Fourth, Fifth, and Eighth Amendment Constitutional Rights under 42 U.S.C. § 1983  (against all Defendants) |
| Count II. | Violation of 42 U.S.C. § 1985 for conspiracy to violate civil rights (against Seal and Ratzlaff) |
| Count III. | Assault and Battery (against Seal and Ratzlaff) |
| Count IV. | Intentional Infliction of Emotional Distress (against Seal and Ratzlaff) |
| Count V. | False Imprisonment (against Seal and Ratzlaff) |
| Count VI. | Negligence (against Seal and Ratzlaff) |
| Count VII. | Negligence (against Village of Beaver) |

Am. Compl., ECF No. 4.  Defendants filed their Motion for Summary Judgment on

March 30, 2010.  Mot. Summ. J., ECF No. 19.

## II. SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Federal Rule of Civil

Procedure 56(a), which provides: "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Court may grant summary judgment if the opposing party fails to make a

showing sufficient to establish the existence of an element essential to that party's case

and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d. 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. DISCUSSION

#### A. Plaintiffs' § 1983 Claims

Count 1 of the Amended Complaint brought against all Defendants alleges a

claim in violation of 42 U.S.C. § 1983, stating in relevant part:

> The intentional assault and battery of Josh and Christina without justification
> violated the rights of Plaintiffs as guaranteed by the Fourth, Fifth, and Eighth
> Amendments to the United States Constitution and such misconduct
> constituted a departure from the evolving standards of decency that marked
> the progress of a maturing society, where Defendants Seal, Ratzlaff and
> Mather acted with intent to harm the Plaintiffs, for which Defendants Seal,
> Ratzlaff and Mather are individually liable and Defendant Beaver is liable for
> tolerating such misconduct. . . . The intentional assault and battery of Josh
> and Christina, when Defendants had no lawful authority to force entry into
> Plaintiffs' residence or to use force against Josh and Christina, was done
> with. . . deliberate disregard for the constitutional rights of Plaintiffs.

Am. Comp. ¶¶ 26–27, ECF No. 4. Although Plaintiffs are not precise as to how their

rights were violated under each amendment, it appears that Plaintiffs assert that

Defendants violated Plaintiffs' Fourth Amendment rights to be free from the warrantless

entry of their home and the use of excessive force.

> Section 1983 states in pertinent part:

> [e]very person who, under color of any statute, regulation, custom or usage
> of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws of the United States, shall be liable to
> the party injured in an action at law, suit in equity, or other proceedings for
> redress[.]

42 U.S.C. § 1983. Accordingly, a plaintiff must show that a person acting under color of

law deprived him of his rights secured by the United States Constitution or its laws.

*Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

### 1. Section 1983 Claims for violations of Plaintiffs' Fifth and Eighth Amendment Rights against all Defendants

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs

withdrew their Fifth and Eighth Amendment claims under § 1983. Pls.' Resp., ECF No.

24. Plaintiffs concede that they do not have any evidence to support violations of their rights under the Fifth and Eighth amendments. *Id.* Therefore, Defendants' Motion for Summary judgment is granted for those claims.

### 2. Section 1983 Claim for Violation of Plaintiffs' Fourth Amendment Rights against Defendants Seal and Ratzlaff

Plaintiffs argue that their Fourth Amendment rights were violated by Defendants Seal and Ratzlaff in two ways: (1) through the warrantless entry and search of Plaintiffs' home; and (2) through the excessive force used in attempting to arrest Plaintiffs. Pls.' Resp., ECF No. 24.

Seal and Ratzlaff assert they are protected by qualified immunity. They further argue that no material issue of fact exists as to whether Seal and Ratzlaff used excessive force, making it impossible for a jury to reasonably conclude Seal and Ratzlaff violated Plaintiffs' Fourth Amendment Rights.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1994) (internal quotations omitted)). "The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability." *Id.* (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (internal quotations omitted)).

The determination of qualified immunity requires a two-prong analysis. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds, Pearson v. Callahan*,

555 U.S. 223 (2009)[3]; *Griffin v. Coburn*, 473 F.3d. 650, 656 (6th Cir. 2007). The Court must first determine whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. Second, the Court must then consider whether that right was clearly established on a specific level. *Id.* at 200.

### a. Warrantless Entry into Plaintiffs' Home

The Court will first determine whether Seal and Ratzlaff's warrantless entry into Plaintiffs' home violated their Fourth Amendment rights. The Fourth Amendment to the U.S. Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amen. IV. A warrantless entry and search inside a home is presumptively unreasonable; however, certain exceptions exist. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 392 (2006). One exception to that general rule is when "'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1994) (citation omitted). The Supreme Court has emphasized "that exceptions to the warrant requirement are few in number and carefully delineated, and that the police bear a heavy burden when attempting to

---

[3]*Pearson* rejected *Saucier*'s rigid requirement that the to prongs must be addressed in a particular sequence.

demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh*

*v. Wisconsin*, 466 U.S. 740, 749–50 (1984) (internal quotation marks and citations

omitted). Whether an exigency exists is a matter to be determined objectively. In other

words, "[t]he officer's subjective motivation is irrelevant." *Brigham*, 547 U.S. at 393. In

addition, the Supreme Court has held that, absent exigent circumstances, an entry into

a suspect's home to effectuate his arrest is unreasonable unless done pursuant to an

arrest warrant. *Payton v. New York*, 445 U.S. 573, 590 (1980). Probable cause that

the suspect committed a felony is not sufficient to cross the threshold of a person's

home. *Id.*

Here, viewing the facts in light most favorable to the Plaintiffs, Seal and Ratzlaff's

warrantless entry into their home did not fit within any exception to the warrant

requirement. First, there was no indication that Plaintiffs were destroying evidence.

Indeed the evidence (the empty .22 and shotgun shell casings) was on the front porch

and, according to Seal and Ratzlaff, already was being collected. Next, Plaintiffs were

not fleeing from the scene, and attempting to close the door of one's own home from

the inside is not "fleeing" from the police. In Plaintiffs' version of the facts, no

emergency or threat of immediate harm to others was present. Therefore, the Court

holds that Plaintiffs have established a genuine issue of material fact as to whether

Seal and Ratzlaff violated Plaintiffs' constitutional right to be free from a warrantless

entry into their home.

Next, the Court will examine whether the constitutional right at stake was

"particularized" such that a reasonable officer would be aware from existing case law

that his actions would violate that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). That means that "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Id.* On the other hand, novel circumstances do not necessarily lead to a finding of qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Court may consider more than the factual contexts of earlier decisions; the general reasoning of the courts may also put an officer on notice that his conduct is clearly unconstitutional. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).

It has long been established that warrantless entry into a person's home violates the Fourth Amendment and a reasonable officer would recognize that absent an emergency, he was forbidden from entering a person's home without a warrant. *Brigham City*, 547 U.S. at 392; *Payton*, 445 U.S. at 590. Viewing the evidence in the light most favorable to Plaintiffs, and accepting Plaintiff's version of the facts as true, the Court finds that the Fourth Amendment right was clearly established such that Seal and Ratzlaff would have understood that their entry into Plaintiffs' home violated Plaintiffs' rights under Fourth Amendment. Consequently, Seal and Ratzlaff are not entitled to summary judgment on the basis of qualified immunity. The Court therefore denies Defendants' Motion for Summary Judgement as to Plaintiffs' Fourth Amendment warrantless entry claim against Seal and Ratzlaff.

### b. Excessive Force

The Court will proceed to examine whether Seal and Rattzlaff are entitled to qualified immunity with respect to Plaintiffs' excessive force claim. The Court will begin

by determining whether, viewing the evidence in the light most favorable to Plainiffs,
Seal and Ratzlaff violated Plaintiffs' right to be free from excessive force.

To determine whether the use of force is excessive in violation of the Fourth
Amendment, the Court applies a standard of "objective reasonableness." *See Graham
v. Connor*, 490 U.S. 386, 388 (1989). Thus, "the question is whether the officers'
actions are 'objectively reasonable' in light of the facts and circumstances confronting
them, without regard to their underlying intent or motivation." *Id.* at 397. The
reasonableness of a use of force is judged from the perspective of a reasonable officer
at the scene and not with the 20/20 vision of hindsight. *Id.* at 396. Determining
reasonableness requires the Court to carefully balance the nature and quality of the
intrusion on the individual's Fourth Amendment interest against the competing
governmental interests. *Id.*

Proper application of the test requires careful attention to the facts and
circumstances of the case, including the severity of the crime, whether the suspect
poses an immediate threat to the officers and others, and whether he is resisting arrest
or attempting to flee. *Id.* "Because determining reasonableness in this context is such
a fact-intensive endeavor, summary judgment is improper if the legal question of
immunity turns on which version of the facts is accepted." *Griffith*, 473 F.3d. at 656.

In the instant case, the question of reasonableness of Seal and Ratzlaff's actions
turns on which version of the facts is accepted. If Seal and Ratzlaff's version that Josh
Adams began attacking them is accepted, then the use of a baton and mace to subdue
Plaintiffs conceivably might have been reasonable. Under that version, Plaintiffs might
have posed an immediate threat to the officers and potentially considered to have been

resisting arrest.

If the Plaintiffs' version of the facts is accepted, however, then a reasonable jury could conclude that Seal and Ratzlaff's use of mace and physical force was unreasonable. Under Plaintiffs' version of the facts, there is no evidence that Josh continued to pose a risk after his failed attempt to pull Seal off Christina Adams. In that scenario, Plaintiffs did not pose any immediate threat of harm to the Seal or Ratzlaff that would warrant throwing Christina into a cabinet, pushing Christina to the floor and kneeling on her, hitting Josh on the head with a Maglite flashlight, or using mace on Josh. In addition, the nature of the alleged crime (discharging a firearm from a porch), without more, arguably was not severe enough to warrant the use of any force. It is also undisputed that Plaintiffs were not armed when the force was used. Viewing the evidence in the light most favorable to Plaintiffs, the lack of immediacy and threat of harm to others makes it more likely that the force used by Seal and Ratzlaff was excessive. Accepting Plaintiffs' version of the facts for purposes of ruling on Defendants' Motion for Summary Judgment, the Court finds that the Plaintiffs have demonstrated a genuine issue of material fact as to whether Seal and Ratzlaff violated their Fourth Amendment right to be free from excessive force.

Next, the Court must determine whether the right to be free from excessive force was clearly established in a particularized sense. "[T]he right of a nonviolent arrestee to be free from unnecessary pain knowingly inflicted during an arrest is clearly established as of November 9, 2000." *St. John v. Hickey*, 411 F.3d 762, 774 (6th Cir. 2005). In 2003, the Sixth Circuit established the right of individuals who pose no safety risk to the police to be free from gratuitous violence during arrest. *Shreve v. Jessamine Cnty.*

*Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2003). Relevant to the facts in this case, under

Sixth Circuit case law, use of pepper spray on a suspect who has not been told she is

under arrest and is not resisting arrest constitutes excessive force. *Adams v. Metiva*,

31 F.3d 375, 385 (6th Cir. 1994); *Atikins v. Township of Flint*, 94 F. App'x 342, 349 (6th

Cir. 2004).

Applying these principles, and viewing the facts in the light most favorable to the

Plaintiffs, the Court finds that the law pertaining to excessive force was clearly

established so that reasonable officers in Seal or Ratzlaff's position should have known

that the use of mace and physical force against Plaintiffs violated their rights under the

Fourth Amendment. The Court finds that Defendants therefore are not entitled to

summary judgment on the issue of qualified immunity. Accordingly, the Court denies

Defendants' Motion for Summary Judgment in regards to Plaintiffs' § 1983 claim for

excessive force against Seal and Ratzlaff.

### 3. Section 1983 Claim for Violation of Plaintiffs' Fourth Amendment Rights against Defendant Beaver

The Village of Beaver asserts that the Court should grant summary judgment in

its favor with respect to Plaintiffs' § 1983 claims because Plaintiffs have failed to prove

that a direct causal link exists between Beaver's actions and any violations of Plaintiffs'

constitutional rights.

Section 1983 does not permit a plaintiff to sue a local government entity on the

theory of *respondent superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S.

658, 692–94 (1978). "In particular . . . a municipality cannot be held liable solely

because it employs a tortfeasor." *Id.* Instead, a local government entity violates § 1983

where its official policy or custom actually serves to deprive an individual of his or her constitutional rights. *Monell*, 436 U.S. at 692–94. For a "policy" to give rise to liability under § 1983, "it is not enough . . . merely to identify conduct properly attributable to the municipality." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Additionally, Plaintiffs have the burden of proving that a policy or custom of the governmental entity was the driving force behind the alleged constitutional violation. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Plaintiffs are also required to demonstrate a "direct causal link between the custom and the constitutional deprivation; that is, [they] must show that the particular injury was incurred because of the execution of that policy." *Id.* "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability." *Id.*

Furthermore, where the established policies of the municipality do not violate the constitution directly, municipalities may nevertheless incur § 1983 liability where they fail to adequately train their personnel such that a policy is applied in an unconstitutional manner. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). In such cases, the plaintiff must show "the failure to train amounts to deliberate indifference to [the] rights of persons with whom the police come into contact." *Id.* at 388. In essence, the municipality must have exhibited deliberate indifference to "known or obvious consequences;" mere "simple or even heightened negligence will not suffice" to render it liable. *Brown*, 520 U.S. at 407; *see also Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006).

In sum, to establish liability, a plaintiff must show that the municipality's custom was "'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty. Bd. Of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). Such a custom must "reflect a course of action deliberately chosen from among the alternatives." *Id.* at 508.

Plaintiffs argue that a direct causal link exists between Beaver's alleged hiring of "incompetent and abusive peace officers" and Beaver's alleged failure in "conducting meaningful oversight of its law enforcement personnel" and the violations of Plaintiffs' constitutional rights. Pls.' Resp., ECF No. 24.

Plaintiffs state that the Village of Beaver showed deliberate indifference to its citizens by hiring Seal, who allegedly had very little experience, without a formal interviewing process. *Id.* at 14–15. According to Plaintiffs, Beaver's deliberate indifference extended to its lack of meaningful oversight of Seal and other police officers on a regular basis. *Id.* at 15.

Defendants make two points as to why their Motion for Summary Judgment should be granted on Plaintiffs' municipal liability claim under § 1983: (1) Plaintiffs have failed to prove that a constitutional violation at the hands of a municipal agent or employee occurred; and (2) Plaintiffs fail to provide admissible evidence to support the claim that any constitutional violation was committed pursuant to an official policy or custom. Defs.' Reply. 8, ECF No. 28.

Accepting Plaintiff's version of the evidence as true, Plaintiffs have established a genuine issue of material fact as to whether their Fourth Amendment rights were violated by Beaver's employees. Yet, even viewed in the light most favorable to the

Plaintiffs, they fail to establish that Beaver had a well-established policy and procedure for training that showed a deliberate indifference to Beaver citizens' constitutional rights. Defendants are correct that the evidence offered by Plaintiffs is insufficient to prove Beaver had the level of culpability required under municipal liability.  First, the evidence Plaintiffs offer would be inadmissible at trial.   For example, Plaintiffs submit a newspaper article as evidence that the Village of Beaver and Mayor Rocky Brown were aware that Seal and Ratzlaff were acting inappropriately.  Defendant correctly states that newspaper articles are inadmissible hearsay.  *Turner v. City of Taylor*, 412 F.3d 629, 652 (6th Cir. 2005).  Furthermore, whether or not Mayor Brown found that two police officers did not act appropriately does not prove the Village of Beaver had a policy or custom for its police officers to use excessive force.

Second, Plaintiffs rely on a statement Mayor Brown made during his deposition to the effect that he heard other police officers commenting about Seal and Ratzlaff's inappropriate conduct.   The alleged statements by other officers are plainly hearsay and inadmissible evidence under Federal Rule of Evidence 802.  Ultimately, even though this Court considers all the evidence in the light most favorable to the non-moving party, that evidence is limited in scope to evidence that would actually be admitted at trial. *Reeves*, 530 U.S. at 150–51.  Therefore, the Court declines to consider Plaintiffs' inadmissible hearsay evidence.  Moreover, even if the Court considered the hearsay, Plaintiff has nonetheless fallen short of establishing that Seal and Ratzlaff acted in accordance with an established policy or custom of the Village of Beaver.  Since Plaintiffs have failed to present admissible evidence of a policy or custom that caused the alleged use of excessive force, the Court grants Defendants'

Motion for Summary Judgment as to Plaintiffs' § 1983 claims against the Village of Beaver.

**B. Plaintiffs' § 1985 Claim**

Plaintiffs have waived Count II, violation of 42 U.S.C. § 1985 for conspiracy to violate their civil rights. Plaintiffs failed to address that claim in their Response to Defendant's Motion for Summary Judgment. Therefore, Defendants' Motion for Summary Judgment is granted as to Plaintiffs' § 1985 claim.

**C. Plaintiffs' State Law Claims**

**1. State Law Negligence Claim against Village of Beaver**

Plaintiffs also bring a state law claim for negligence against the Village of Beaver. Defendants argue that Beaver is immune from liability under the Political Subdivision Tort Liability Act, Ohio Rev. Code Chapter 2744 ("PSTLA"). Determination of immunity under Chapter 2744 requires a three-tiered analysis. *Elston v. Howland Local Sch.*, 113 Ohio St. 3d 314, 317 (2007). First, the Court must examine whether the political subdivision meets the requirements of Ohio Rev. Code § 2744.02(A)(1). *Id.* If the political subdivision meets the first test, then the Court must determine whether any of the five exceptions to immunity listed in Ohio Rev. Code § 2744.02(B) apply. *Id.* Third, if any of the exceptions listed in Ohio Rev. Code § 2744.02(B) apply, then the Court must consider whether the political subdivision is nevertheless immune under one of the defenses set forth in Ohio Rev. Code § 2744.03. *Id.*

Chapter 2744's general immunity provision states as follows:

For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in

> damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

Ohio Rev. Code § 2744.02(A)(1). It is undisputed that Beaver is a political subdivision within the meaning of Ohio Rev. Code § 2744.02(A)(1). Beaver has satisfied the first tier of the Chapter 2744 immunity analysis. The Court will proceed to address the second tier.

Ohio Rev. Code § 2477.02(B) contains five exceptions to political subdivision immunity:

> (1) the negligent operation of any motor vehicle by employees engaged within the scope of their employments; (2) the negligent performance of acts by employees engaged in proprietary functions of the political subdivision; (3) the negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads; (4) negligence of employees occurring within or on the grounds of, and due to physical defects within or on the grounds of, and due to physical defects within or on the grounds of, buildings that are used in connection with performance of a governmental function; and (5) when civil liability is expressly imposed by the Ohio Revised Code.

*Gillman v. Schlagetter*, No. 3:08–cv–454, 2010 WL 3447807, at *9 (S.D. Ohio Aug. 30, 2010) (summarizing Ohio Rev. Code § 2477.02(B)). Defendants argue none of the above exceptions apply to Beaver. Plaintiffs argue that "immunity is not applicable in instances of the negligent performance of proprietary functions (here—law enforcement)." Pls.' Mem. Contra 16, ECF No. 24. Defendants maintain that provision of a police force is a governmental, not proprietary function.

Defendants are correct. The PSTLA expressly states that providing police services is a governmental function. Ohio Rev. Code § 2744.01(C)(2)(a); *Olaes v. City of Cleveland*, 1:08–cv–2973, 2011 WL 861711, at *6 (N.D. Ohio Feb. 4, 2011) (City of Cleveland immune under PSTLA for acts of its employees arresting and prosecuting the

plaintiff). Plaintiffs do not assert any other exception to political subdivision liability applies, and indeed, none do. Consequently, the Court concludes the Village of Beaver is immune from Plaintiffs' state law negligence claim under the PSTLA. Accordingly, Beaver is entitled to summary judgment on Plaintiffs' claim for common law negligence.

### 2. State Law Claims against Seal and Ratzlaff

Plaintiffs brings four state law claims against Defendants Seal and Ratzlaff: assault and battery, intentional infliction of emotional distress, false imprisonment, and negligence. Defendants Seal and Ratzlaff argue that they are immune from liability under the PSTLA, which states in pertinent part: "The employee [of a political subdivision] is immune from liability unless . . . [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner." Ohio Rev. Code § 2744.03(A)6)(b).

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have demonstrated a genuine issue of material fact as to whether Seal and Ratzlaff acted in a wanton or reckless manner. As a result, summary judgment on the basis of the PSTLA is not appropriate for Seals and Ratzlaff.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** Defendants' Motion for Summary Judgment in favor of Defendants in regards to Plaintiffs' § 1983 claims for violations of rights under the Fifth and Eighth Amendments, Plaintiffs' § 1983 claim against the Village of Beaver, Plaintiffs' § 1985 claim, and Plaintiffs' state law claim of negligence against the Village of Beaver.

The Court **DENIES** Defendants' Motion for Summary Judgment in regards to Plaintiffs' § 1983 claims for violation of their Fourth Amendment rights against Seal and Ratzlaff and Plaintiffs' state law claims against Seal and Razlaff.

The Clerk shall remove ECF. No. 19 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**